52 Wn.2d 510 (1958)
326 P.2d 1004
In the Matter of the Welfare of RAYMOND MESSMER, a Minor.
THE STATE OF WASHINGTON, on the Relation of Raymond Messmer, Sr., Plaintiff,
v.
THE SUPERIOR COURT FOR KING COUNTY, William G. Long, Judge, Respondent.[1]
No. 34558.
The Supreme Court of Washington, Department Two.
June 20, 1958.
Raymond A. Reiser, for relator.
F.M. Reischling, for respondent.
FINLEY, J.
This case comes to the supreme court on certiorari to review an order of the juvenile court for King county. The order permanently deprives a father of all parental rights and interests in and to his minor child, continues the status of the child as a ward of the court, and commits him into the permanent custody of the Catholic Charities of the Archdiocese of Seattle.
[1] There is no provision for appeal in the juvenile court law. The orders and judgments of the juvenile court, whether relating to delinquent or dependent children, are subject to review by certiorari. State ex rel. Gray v. Webster (1922), 122 Wash. 526, 211 Pac. 274; In re a Minor (1951), 39 Wn. (2d) 744, 238 P. (2d) 914; In re a Minor (1954), 45 Wn. (2d) 20, 273 P. (2d) 243.
At the outset, we are met with respondent's motion to quash the writ of certiorari. Respondent contends that, under RCW 7.16.050, this court has no jurisdiction to review the case unless the application for writ of certiorari is supported by an affidavit of the party beneficially interested. It is respondent's position that, in the present case, the father of the child is the party beneficially interested; respondent points out that the father's attorney signed the affidavit.
Petitioner contends that a brief analysis of some of the powers and rules of the supreme court is necessary in order to put the motion to quash in a proper perspective.
RCW 2.04.190 gives the supreme court the power to prescribe the forms and procedure regarding writs,
*512 "... and generally to regulate and prescribe by rule the forms for and the kind and character of the entire pleading, practice and procedure to be used in all suits, actions, appeals and proceedings of whatever nature by the supreme court, ..."
RCW 2.04.200 provides:
"When and as the rules of court herein authorized shall be promulgated all laws in conflict therewith shall be and become of no further force or effect...."
The constitutionality of these statutes was upheld in State ex rel. Foster-Wyman Lumber Co. v. Superior Court (1928), 148 Wash. 1, 267 Pac. 770, and it is no longer open to question.
Petitioner's position is that Rules on Appeal 1 and 57, 34A Wn. (2d) 4 and 24, as amended, effective January 3, 1956, supersede RCW 7.16.050 as to the jurisdictional requirements for a writ of certiorari, and that under Rule 57, supra, the only jurisdictional requirement is timely notice.
Rule on Appeal 1, supra, provides:
"The mode provided by these rules for appealing cases to the supreme court, and for securing a review of the same therein, shall be exclusive and shall supersede all other methods heretofore provided."
Rule on Appeal 57, supra, provides in part:
"Petitions for writs of review or certiorari shall be served upon the adverse party in the manner prescribed in Rule 3 not later than fifteen days after the superior court order or judgment in question becomes final."
Petitioner further contends that, if the requirements of RCW 7.16.050 have not been superseded, he was misled to his prejudice by reason of the ambiguity of Rule on Appeal 57, supra.
[2] We believe that our previous decisions relative to the requirements of Rule on Appeal 63, 34A Wn. (2d) 65, settle the issue presented by this motion to quash. Rule 63, supra, admonishes this court to determine all cases "upon the merits," (Italics ours), to disregard technicalities, and to "consider as made all amendments which could have *513 been made." This admonition was formerly statutory. See Rem. Rev. Stat., § 1752, and RCW 4.88.280.
The defect in the application for the writ of certiorari of which respondent complains does not affect the merits of the controversy; it was capable of being amended; and the notice requirement of Rule on Appeal 57, supra, has been complied with. This court "will therefore treat defects of this kind as amended, or, what is better, perhaps, disregard them." Smith v. Newell (1903), 32 Wash. 369, 73 Pac. 369. See, also, State v. Lewis (1904), 35 Wash. 261, 77 Pac. 198; In re Sullivan's Estate (1905), 40 Wash. 202, 82 Pac. 297; State ex rel. Adams v. Irwin (1913), 74 Wash. 589, 134 Pac. 484; Greene v. Union Pacific Stages, Inc. (1935), 182 Wash. 143, 45 P. (2d) 611; Powell v. Continental Baking Co. (1957), 49 Wn. (2d) 753, 306 P. (2d) 757; and Kane v. Klos (1957), 50 Wn. (2d) 778, 314 P. (2d) 672. The motion to quash is denied.
We pass now to the merits of the controversy.
The minor in question is the product of a common-law marriage contracted in Butte, Montana. The mother has apparently abandoned the child; she is not involved in this proceeding. The record reveals that, on the whole, the child has been raised by his paternal grandparents.
A brief history of the court proceedings with respect to this minor child is necessary for a proper understanding of the issues presented on this appeal.
In August, 1956, the paternal grandmother became ill and unable to take care of the child. She and the child's father went to the Catholic Charities for temporary assistance. The record reveals that all parties agreed that the child would be placed temporarily with the Catholic Charities and remain there until the grandmother recovered sufficiently to resume care of the child. Apparently, to insure financial remuneration from the state for the care of the child by foster parents, or others, the parties agreed to have the child made a temporary ward of the court, with temporary custody in the Catholic Charities. This was accomplished by a proceeding in which the father signed a petition wherein he conceded dependency of the child and requested *514 the court to assume jurisdiction for the welfare of the child, and to place temporary custody of the child with the Catholic Charities. An order to this effect was entered by the juvenile court on September 5, 1956.
Subsequent thereto, the father apparently ran into difficulties with the representative of the Catholic Charities over his marital status, or otherwise; in the spring of 1957, the visitation privileges regarding the child were abruptly terminated as to the father and grandmother by the Catholic Charities' representatives, and without a court order. See In re Jones (1953), 41 Wn. (2d) 764, 252 P. (2d) 284; and State ex rel. Cummings v. Kinne (1941), 8 Wn. (2d) 1, 111 P. (2d) 222.
In July, 1957, the present litigation was commenced by the father through a petition in which he requested that custody of the child be restored to him, because he had relatives who were willing and able to assume the care of the child.
After the hearing on the father's petition, the juvenile court found that both parents of the minor child had shown themselves to be unfit to have custody of the child; that the father had no plan for the child; and that the child's welfare required that the father be deprived of all parental rights; and that the child remain a ward of the court in the permanent custody of the Catholic Charities. An order based on those findings was entered on September 20, 1957. The father attacks the order on the ground that he was not accorded due process of law.
[3] In In re Petrie (1952), 40 Wn. (2d) 809, 246 P. (2d) 465, this court said:
"We have decided that the elements of the constitutional guaranty of due process in its procedural aspect are notice and an opportunity to be heard or defend before a competent tribunal in an orderly proceeding adapted to the nature of the case; also to have the assistance of counsel, if desired, and a reasonable time for preparation for trial."
When the father and his attorney appeared at the hearing, they had notice only that the question of temporary custody would be litigated. They had no notice that the question of permanent dependency would be litigated, or *515 that there might be a deprivation or complete severance of all parental rights. They could have reasonably anticipated only one or the other of two possible orders by the juvenile court as a result of the hearing: (1) that temporary custody would be continued in the Catholic Charities, or some other suitable custodian; or (2) that temporary custody would be given to the father, or to one of his relatives.
In re Petrie, supra, and In re Ross (1954), 45 Wn. (2d) 654, 277 P. (2d) 335, are pertinent regarding the question of permanent deprivation of the father's parental rights. In the Petrie matter, we held that, even though a child has been properly made a ward of the court, there nevertheless remains the legal relationship of parent and child which cannot be terminated by court action without according the parent due process of law. In that case, the probation officer filed a complaint requesting an order severing all parental ties. The summons was served upon the mother of the child on the day before the hearing; the complaint was never served on her. In discussing the due process question, we said:
"She had substantial legal rights which had been challenged. She was faced with an effort on the part of public authority to deprive her of her parental rights so that the way might be cleared for strangers to adopt her child. She needed time and opportunity to secure evidence that she had remarried, was the mother of another child, that she had an established home, that her husband was able and willing to receive the child into the home and assist in her care and support, that her attitude towards her daughter had changed and become normal, that the reasons for former deprivation of custody would not recur, and any other facts or circumstances bearing on the future welfare of the child. The relatrix would need the services of an attorney. Medical testimony would be helpful.
"The time between two p.m. on a legal holiday and ten a.m. the next day was entirely too short to constitute procedural due process of law."
This court declined to apply the doctrine of waiver, although the mother had made a general appearance and did not ask for a continuance of the hearing. It was apparent that the mother had not realized the full import and the far-reaching *516 consequences of the issues tendered by the petition.
In In re Ross, supra, the court held that "before parents can be permanently deprived of all custody, control, care, or parental rights over their children, they must be accorded the opportunity of a hearing." On the other hand, this court recognized that the juvenile court can "on proper notice and on a proper showing, deprive the parents, temporarily or permanently, of the custody of their children." (Italics ours.)
[4] The order depriving the father permanently of all parental rights, being outside the issues tendered at the hearing, is of no effect. In re Day (1937), 189 Wash. 368, 65 P. (2d) 1049. Similarly, the question of permanent dependency was not before the court and should not have been so pre-emptorily determined.
The order of the juvenile court must be reversed, and the cause remanded for a hearing on the issue actually presented by the father's petition  i.e., the matter of temporary custody of the child. It is so ordered.
Our decision on this aspect of the matter should not be construed as prejudicing the father's right to submit a new petition, alleging that the basis of the child's temporary dependency has terminated. Nor does our decision in any way prejudice or foreclose the right of the juvenile court to otherwise examine the dependency status of this child on proper notice to the interested parties; neither does the decision in any way prejudice the right of the juvenile court, on proper notice and proper showing, to deprive the father of all parental rights.
[5] Visitation privileges must be restored pending an appropriate order of the juvenile court, after appropriate notice and hearing with respect thereto. State ex rel. Cummings v. Kinne, supra.
HILL, C.J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.
NOTES
[1] Reported in 326 P. (2d) 1004.