[No. 8928–5–I.   Division One.   December 15, 1980.]

MARGARET COUGHLIN, *Appellant,* v. SEATTLE SCHOOL DISTRICT NO. 1, ET AL, *Respondents.*

*Margaret Coughlin,* pro se.

*Michael W. Hoge,* for respondents.

RINGOLD, J.—Margaret Coughlin filed an action in the King County Superior Court challenging the Seattle School District's (District) closure of five elementary schools. She alleged numerous deficiencies in the draft and final Environmental Impact Statements (EIS) that preceded the closure. She appeals a summary judgment of dismissal. We conclude that the trial court properly held that Coughlin lacks standing to bring this action.

Margaret Coughlin is a resident homeowner in the Seattle School District, living in the Lawton Elementary School neighborhood. She has been active in school and

community planning for many years and has helped pioneer many of the planning procedures used by the District. She is a member of the Citizens' District Planning Commission, which was organized to assist in the preparation of a long–range plan that will include recommendations for handling anticipated school closures.

On January 17, 1979, the Seattle School Board (Board) ordered the preparation of an EIS for the closure of five elementary schools: Crown Hill, Haller Lake, Jefferson, Maple Leaf and Webster. The draft EIS was issued on March 13, 1979, and a public hearing was held on April 10, 1979. Several citizens voiced their objections at that hearing. Coughlin criticized the draft EIS in a letter she wrote to the District on April 2, 1979.

On May 29, 1979, Coughlin appealed the closure decision to the King County Superior Court. She also sought writs of certiorari, mandamus and prohibition to challenge the action. In her petition she addressed the history of her involvement in school planning in Seattle and realleged the complaints in her letter of comment. She alleged several violations of the regulations adopted to enforce the State Environmental Policy Act of 1971 (SEPA). RCW 43.21C. She alleged the following injuries: (1) diminished value of her property; (2) impaired enjoyment of her property, environment and quality of life; (3) violation of her right to a healthful environment; (4) illegal amendment and concealment of the city's comprehensive plan, setting a precedent for similar deception in the future and repeating prior deception affecting Discovery Park near her residence; (5) abandonment of procedures developed during her 30 years of effort to improve the residential environment and assist the Seattle public schools; (6) use of taxes against her interest.

On the issue of standing, the District supported its summary judgment motion by submitting the deposition of Coughlin. She conceded in that deposition and in her own pleadings that she did not reside in or adjacent to any of the elementary school attendance areas affected by the five

school closures. In support of her standing to file this action, Coughlin relied upon her residency in the school district, her long history of active participation in school planning and her opinion that the closure created new policy that could quickly affect the Lawton School attendance area. She also relied upon her deposition testimony that the data base for school closures was incorrect because of inadequate citizen participation. She agreed that declining enrollment required some closures, but asserted that the Board had not adequately protected the public from a future shortage of facilities.

In granting the motion for summary judgment, the trial court did not reach the issue of alleged defects in the EIS. The court held that Coughlin lacked standing to challenge the EIS and that SEPA did not require the District to prepare and consider an EIS before closing the five elementary schools. Because of our holding that Coughlin lacks standing, we decline the District's request to decide whether an EIS was required.

Coughlin contends that SEPA creates a fundamental right in the quality of the environment that gives her a right to appeal the action of a school board. RCW 28A.88-.010; *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 525 P.2d 774 (1974); *Citizens Against Mandatory Bussing v. Palmason*, 80 Wn.2d 445, 495 P.2d 657, 50 A.L.R.3d 1076 (1972); *Lane v. Ocosta School Dist. 172*, 13 Wn. App. 697, 537 P.2d 1052 (1975). She also asserts that where the welfare of the whole community is at stake, a citizen of the school district has standing to challenge an EIS by seeking writs of certiorari, mandamus and prohibition. *Byers v. Board of Clallam County Comm'rs*, 84 Wn.2d 796, 529 P.2d 823 (1974); *Anderson v. Island County*, 81 Wn.2d 312, 501 P.2d 594 (1972).

The superior court has jurisdiction to review the adequacy of an EIS prepared for a local administrative agency's proposed action because of its inherent and constitutional authority to review administrative actions that

are alleged to be violative of a fundamental right and either illegal or arbitrary and capricious. *Leschi; Short v. Clallam County*, 22 Wn. App. 825, 593 P.2d 821 (1979); Const. art. 4, § 6 (amendment 65). This authority, therefore, is available to review legislative or administrative actions of a school board. *Lane.* This constitutional power of review has been described as "constitutional certiorari" to distinguish it from the statutory writs of certiorari, prohibition and mandamus. *Pettit v. Board of Tax Appeals*, 85 Wn.2d 646, 652, 538 P.2d 501 (1975); RCW 7.16.030, .040, .150, .160, .290, .300.

■ Coughlin seeks review under the statutory writs procedure and the school board appeal statute, RCW 28A.88-.010. These statutes can provide jurisdiction in SEPA cases, but only when certain criteria are satisfied. The statutory writ of mandamus is available to compel the performance of a clear legal duty such as a duty to prepare and consider an EIS or a duty to exercise discretion. *Cook v. Clallam County*, 27 Wn. App. 410, 618 P.2d 1030 (1980). It is not a means to obtain review of the adequacy of an EIS or the propriety of a discretionary school closure decision. *Neal v. Wallace*, 15 Wn. App. 506, 550 P.2d 539 (1976).

■ The statutory writ of prohibition, the counterpart of the statutory writ of mandamus, is available to arrest the Board's action when it attempts to act without jurisdiction or in excess of its jurisdiction. It is not a proper remedy where, as here, the Board is exercising its jurisdiction in an allegedly erroneous manner. RCW 7.16.290; *State ex rel. Grays Harbor Ry. & Light Co. v. Denney*, 150 Wash. 690, 274 P. 791 (1929).

■ The school board appeal statute and the statutory writ of certiorari grant jurisdiction only where the challenged action is quasi–judicial. *Leschi* (certiorari); *Lane* (school board appeal statute). A quasi–judicial action is one that is similar to the function that courts have historically performed. *Leschi; Lane.* The preparation and review of an EIS and a decision to close schools are not quasi–judicial

actions. These are matters within the administrative discretion of the Board and are not similar to judicial fact finding and dispute resolution.

In light of the foregoing analysis, Coughlin cannot obtain review in this case under the statutory writs or the school board appeal statute. The sole source of jurisdiction is the inherent and constitutional judicial review power discussed in *Leschi*. To maintain the action, Coughlin must satisfy the standing test applicable to this type of jurisdiction. *See Wilson v. Nord,* 23 Wn. App. 366, 597 P.2d 914 (1979).[1]

It is obvious that courts cannot resolve every issue which may be raised by a litigant. As a consequence, guidelines have been adopted by statute and through common law which limit access to the judicial process. This is not to say that concerned citizens are foreclosed from challenging state and other governmental actions through the appropriate administrative, legislative, or political process. It must be recognized, however, that courts cannot be open to every citizen's objection to every action of our governmental representatives in the legislative or executive branches of government. Consequently, the rules of standing have been promulgated by the legislatures and the courts to regulate access to the judicial process.

Standing to invoke the inherent and constitutional judicial authority to review the adequacy of an EIS requires the plaintiff to allege and prove facts that show a direct adverse effect on her from the proposed action. *Leschi.* The pleadings and proof are insufficient if they merely reveal imagined circumstances in which the plaintiff could be affected. Our Supreme Court has expressly adopted the

---

[1]Statutory certiorari cases are helpful, however, because the standing test in a constitutional certiorari case is at least as stringent as in a statutory certiorari case. *Compare Leschi Improvement Council v. State Highway Comm'n.,* 84 Wn.2d 271, 525 P.2d 774 (1974) (constitutional certiorari) *with Byers v. Board of Clallam County Comm'rs,* 84 Wn.2d 796, 529 P.2d 823 (1974) (statutory certiorari). While language in *Byers* may imply a more lax standing test for statutory certiorari, we express no opinion as to that possibility. We treat statutory certiorari cases as authority for the minimal but not necessarily sufficient test for standing in a constitutional certiorari case.

federal approach to standing in environmental cases and has required the allegations and proof to include "injury in fact," *i.e.,* a perceptible present or future harm caused by the challenged action. *Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978);[2] *see also Moran v. State,* 88 Wn.2d 867, 568 P.2d 758 (1977). These requirements preclude standing based solely upon the harm claimed by Coughlin in her capacity as a concerned and active citizen, taxpayer and resident of the District. Such harm is too remote to establish standing in a SEPA case. Also too remote is the direct harm she claims will occur when the Board takes future action based upon the precedents she perceives in the closure of these five schools.

■ The remaining grounds to support Coughlin's standing to maintain this action are her allegations of adverse effects to her neighborhood, property value and environmental health. To obtain summary judgment on these allegations, the District has the initial burden to prove by uncontradicted facts that there is no genuine issue of material fact. If the District does not sustain this burden, summary judgment is improper. In ruling on the motion the court must view the material evidence and all reasonable inferences in the light most favorable to Coughlin, the nonmoving party. If reasonable people might reach different conclusions, the motion must be denied. *Jacobsen v. State,* 89 Wn.2d 104, 569 P.2d 1152 (1977).

The District has met its burden by presenting uncontroverted evidence that Coughlin does not reside in or adjacent to any of the affected school attendance areas. Viewing this evidence in the light most favorable to Coughlin, reasonable people could reach only one conclusion: there is no direct and perceptible adverse effect on Coughlin's neighborhood, property value or environmental health.

Once the moving party satisfies its burden of proving the nonexistence of a genuine issue, the nonmovant cannot rely

---

[2]*Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978) is a statutory certiorari case. See footnote 1, *supra.*

on her allegations to resist summary judgment. She assumes the burden of setting forth specific facts showing the existence of a genuine issue for trial. *Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 564 P.2d 1131 (1977). Coughlin has not met this burden to show harm to her neighborhood, environment or residence. Her only controverting evidence is her residency in the District, her active history of participation in school planning and her opinion that misinformation and new procedures will directly harm her when the Board takes future action. As previously discussed, this evidence is legally insufficient to support standing to maintain this action. Viewing the entire lengthy record in the light most favorable to Coughlin, we find no evidence and no reasonable inference from the evidence that she suffered or will suffer a direct and perceptible adverse effect from the decision to close five schools. There is no genuine issue as to any material fact relevant to standing, and the undisputed facts show that the District is entitled to judgment as a matter of law. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963).

Affirmed.

CALLOW, C.J., and JAMES, J., concur.