IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PALMER D. STRAND and PATRICIA N. STRAND, | ) ) ) | No. 35597-7-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON BOARD OF TAX APPEALS, SPOKANE COUNTY, and SPOKANE COUNTY ASSESSOR, | ) ) ) ) | |
| Respondents. | ) | |

SIDDOWAY, J. — Principles of res judicata prevent a party from relitigating a matter already decided between the parties, even if the passage of time provides a losing party with better evidence in support of its position. The doctrine of exhaustion of remedies also prevents a party from seeking a legal remedy where it has not pursued available administrative remedies. The Administrative Procedure Act (APA), chapter 34.05 RCW, limits the issues that can be raised in a petition for judicial review.

Palmer and Patricia Strand seek to reopen the Spokane County assessor's past assessed valuations of their residential real property and recover what they claim are

No. 35597-7-III
*Strand v. Bd. of Tax Appeals*, *et al.*

overpaid taxes, but the trial court correctly concluded that the history of their appeals

presented these bars to the remedy they seek. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Palmer and Patricia Strand have had a longstanding dispute with the county of

Spokane, its board of equalization (county board) and the Washington State Board of Tax

Appeals (BTA) over the assessed value of the single-family residential property they own

in Nine Mile Falls. Some of the background is detailed in this court's earlier decision in

*Strand v. Spokane County Assessor*,[1] which dealt with their challenge to the 2009

assessed value of their property.

In the years leading up to the Strands' challenge of the 2013 assessed value of

their property—the valuation triggering this lawsuit—the Strands had frequently

challenged the county's assessed value of their property before the county board, had

frequently appealed county board decisions to the BTA, and had frequently sought

judicial review of BTA decisions. Among their contentions were that the assessor

mischaracterized their walkout basement and erred selecting and adjusting comparable

sales. The following table summarizes the history of the Strands' appeals between 2008

and 2012:

---

[1] No. 31340-9-III (Wash. Ct. App. Nov. 26, 2013) (unpublished), http://www
.courts.wa.gov/opinions/pdf/313409.unp.pdf.

2

No. 35597-7-III
*Strand v. Bd. of Tax Appeals*, *et al.*

| Year | Appeal to county board of equalization | Appeal to BTA | Judicial appeal |
|---|---|---|---|
| 2008[2] | Appealed unsuccessfully[3] | Appealed unsuccessfully[4] | Appealed to superior court but dismissed for failure to serve BTA.[5] |
| 2009[6] | Appealed unsuccessfully[7] | Appealed unsuccessfully; petition for reconsideration denied[8] | Appealed to superior court unsuccessfully; appealed unsuccessfully to this court.[9] |
| 2010[10] | Appealed unsuccessfully[11] | Appealed unsuccessfully; petition for reconsideration denied.[12] | Appealed to superior court but dismissed for failure to serve BTA.[13] |
| 2011, 2012 | No appeal[14] | | |

---

[2] Clerk's Papers (CP) at 704.
[3] CP at 704-08.
[4] CP at 710-20.
[5] CP at 721-22.
[6] CP at 724.
[7] CP at 724-29.
[8] CP at 730-54.
[9] CP at 756-57; *Strand*, No. 31340-9-III.
[10] CP at 771.
[11] CP at 771-76.
[12] CP at 777-84.
[13] CP at 786-87.
[14] CP at 688.

In 2013, the county assessor valued the Strands' property at $383,700. The Strands appealed the assessed value to the county board, contending their property should be valued at only $325,000. The county board denied the appeal, and the Strands appealed to the BTA. In the several years their appeal of the 2013 assessed value was pending, the Strands acted or chose not to act on subsequent valuations as follows:

| Year | Appeal to county board of equalization | Appeal to BTA | Appeal to superior court |
|------|------|------|------|
| 2014 | No appeal[15] | | |
| 2015 | Appealed unsuccessfully[16] | Appealed; appeal pending at the time of proceedings below[17] | |
| 2016 | Appealed unsuccessfully[18] | No appeal[19] | |

The appeal to the BTA of the Strands' 2013 assessed value was heard by telephone in January 2016. Having received no decision by late July 2016, Ms. Strand sent electronic mail to the BTA, asking why no decision had yet been made. A BTA employee responded that the decision "is set to be issued in the next few days." CP at 21.

_____

[15] CP at 688.
[16] CP at 688.
[17] CP at 688, 649.
[18] CP at 688.
[19] CP at 688, 647.

4

No. 35597-7-III
*Strand v. Bd. of Tax Appeals*, *et al.*

When the BTA still had not issued a decision by November 2016, the Strands sent a letter of complaint to the BTA, the governor, the attorney general, the county and the county assessor.

Having still received no decision, on April 18, 2017, the Strands, proceeding pro se, filed the lawsuit below, requesting judicial review of the BTA's "Formal Docket 13-179 proceeding." CP at 1. Their petition explained they petitioned the court "because the BTA has failed in its duty (RCW 42.20.100) to provide the Strands a complete administrative real property appeal pursuant to RCW 84.08.130 by failing to issue a Decision on Docket 13-179." CP at 2.

The Strands' action was clearly one for judicial review under the APA. *See, e.g.*, CP 1, 6 (citing RCW 34.05.514 and .570(4)(b) as the basis for the action, and citing RCW 34.05.574 in identifying the relief requested). The superior court evidently perceived theirs as a routine petition for review of an agency decision because it immediately set deadlines for filing the administrative record and briefs and set oral argument for June 30.

Shortly thereafter, and before any court hearing could take place, the BTA issued its initial decision. The decision, issued on May 9, was in the Strands' favor, concluding that for 2013, the county assessor "1) overstates the value of its basement space, 2) fails to account for valuable waterfront improvements to the Assessor's comparable sales, and 3) improperly omits from her analysis a sale of a similar property also located on the

5

Spokane River." Administrative Record (AR) at 3. The decision set aside the county's property value determination and ordered that the county assessor list the value at $325,000. The initial decision was not appealed and became final. The Strands acknowledge receiving a refund of taxes paid based on the 2013 assessed value.

At the time set for the June 30 hearing in superior court, the Strands appeared pro se. A deputy prosecutor appeared on behalf of the county and its assessor and an assistant attorney general later joined the hearing by telephone on behalf of the BTA. After the trial court briefly introduced the matter, it asked Ms. Strand to help the court understand "what it is you're requesting the Court to consider and the decision you're requesting the Court to make," noting that the BTA decision "was in your favor, apparently." Report of Proceedings (RP) at 5. Ms. Strand contended that the BTA ruling showed that the county's property tax assessments had been incorrect going back to 2008. With the help of clarifying questions from the court, Ms. Strand said she was requesting "disgorgement of taxes already paid" "based upon ten years of erroneous assessment[s]." RP at 13-14.

The county argued the Strands were barred by res judicata and collateral estoppel from reopening values assessed in 2008, 2009, and 2010 because they had litigated each of those values based on the same issues and facts raised by the current petition. For the 2011, 2012, and 2014 assessment years, the county argued that the Strands filed no appeals, and for the 2016 assessment year, it argued that the Strands appealed to the

6

county board but failed to appeal its decision to the BTA. For those years, the county argued, "the Strands failed to exhaust their administrative remedies." RP at 21.

The county acknowledged that the Strands had appealed the 2015 assessed value to both the county board and the BTA, and the appeal to the BTA was still pending. It acknowledged that the Strands could present the BTA decision on the 2013 valuation as evidence in their favor in the pending appeal of the 2015 assessed value. It acknowledged that if unhappy with the BTA decision, the Strands could seek judicial review from the superior court.

When it was the BTA's turn to argue, the assistant attorney general contended that the only issue raised by the Strands' petition—the BTA's failure to perform its statutory duty—was moot, since the decision had been filed. The assistant attorney general argued that none of the other tax assessment years were before the court because they were not addressed by the Strands' petition. He also noted that the time for review of many of the assessed values had passed, and that the 2015 property tax appeal had "not yet run [its] administrative course and [was] not yet ripe for review." RP at 33.

The court orally ruled, agreeing with the lawyers for the county and the BTA. It underscored that the Strands could henceforth cite the BTA's decision on the 2013 assessment as evidence in their favor. It later entered an order dismissing the Strands' petition on multiple grounds: the limited scope of the agency action under review; res

No. 35597-7-III
*Strand v. Bd. of Tax Appeals*, *et al.*

judicata; failure to exhaust administrative remedies; and the BTA's substantial, albeit

untimely, fulfillment of its duty to review the 2013 assessed value. The Strands appeal.

ANALYSIS

The Strands proceed pro se in appealing the trial court's order dismissing their

petition. The remedy they seek, as summarized in their reply brief, is recovery of taxes

they contend were overpaid based on five assessed values: those for 2008, 2009, 2010,

2014, and 2016. Appellant Reply Br. at 1.

> They make the following assignments of error:
>
> Is the trial court abetting the Assessor in its long-term and systemic
> violations of the U.S. and WA. Constitutions and Titles 84 and 458 by not
> reviewing the record under Title 34 (*bad acts*)?
>
> . . . Is the trial court abetting the BTA in violating standards of review in
> appeals of the Assessor's values by permitting a presumption of correctness
> knowing the Assessor's systemic violations of the U.S. and Washington
> Constitutions and Titles 84 and 458 (bad acts)?
>
> . . . Did this trial court render Title 34 superfluous by its policy to not
> review the record of bad acts of the Assessor and BTA?

Br. of Appellant at 9 (boldface omitted) (footnote omitted). The answer to their

assignments of error is in each case, no. The trial court's dismissal of the petition was

based on its correct application of the law.

I.    PROPERTY VALUATION AND TIME LIMITS ON APPEALS

We begin with a recap of the processes and time limits that apply to the type of

appeals of assessed values that the Strands filed over the years.

8

Each year, the assessor determines the value as of January 1 of all of the locally assessed taxable real property in the county. RCW 84.40.020. The assessed value becomes the basis for the taxes that will become payable in the following year.

A taxpayer dissatisfied with the value as determined by the assessor may appeal the assessed value to the county board of equalization. RCW 84.40.038; RCW 84.48.065, .150; WAC 458-14-056. A taxpayer wishing to appeal an assessed value must generally file a written notice with the county board by July 1 of the assessment year. *Id.*

If dissatisfied with the result of the appeal to the county board, the taxpayer may appeal to the BTA. RCW 82.03.130(2). The appeal must be filed with the BTA within 30 days after the county board's decision. RCW 84.08.130; RCW 82.03.130(1)(c).

The losing party in a formal hearing before the BTA may seek judicial review under the APA. RCW 34.05.534. The appeal to the courts is based on the record made at the BTA. RCW 82.03.180. The appeal must be filed within 30 days of service of the BTA's final order. RCW 34.05.542(2).[20]

---

[20] As an alternative to these administrative avenues, a party who has paid a tax under written protest and has not elected a formal hearing before the BTA may file a refund suit in court. RCW 84.68.020. The action for recovery of taxes paid under protest must be commenced by June 30 of the year following the year in which the taxes became payable. RCW 84.68.060. An appeal to the BTA does not toll the statute of limitations. *Transamerica Title Ins. Co. v. Hoppe*, 26 Wn. App. 149, 154, 611 P.2d 1361 (1980).

For the first time in their reply brief, the Strands state that they paid their property taxes for all years at issue under protest, and are seeking recovery of overpaid taxes under RCW 84.68.020. Appellant Reply Br. at 1. Nowhere in their petition, or for that matter anywhere in the clerk's papers, do they cite the refund action statute or claim to have paid

No. 35597-7-III
*Strand v. Bd. of Tax Appeals*, *et al.*

II.    THE TRIAL COURT CORRECTLY FOUND THAT ONLY THE 2013 ASSESSED VALUE WAS
       AT ISSUE IN BTA DOCKET NO. 13-179

By its express terms, the Strands' petition filed in the action below was a request

under the APA for judicial review of the BTA's action (or more precisely, its inaction) in

BTA docket no. 13-179. The Strands' notice of appeal filed in BTA docket no. 13-179

appealed the county board's decision "pertaining to Assessment Year 2013 for taxes

payable in [the] (following year)." AR at 545.

The BTA's jurisdiction in the Strands' appeal is provided by RCW

82.03.130(1)(b), which authorizes the BTA to hear appeals from a county board pursuant

to RCW 84.08.130. The order of the BTA in such an appeal "has effect up to the end of

the assessment cycle used by the assessor." RCW 84.08.130(2). The trial court's order

dismissing the Strands' petition made the unchallenged finding that "Spokane County

uses an annual assessment cycle meaning that property is revalued every year," and

concluded that, "Therefore, the BTA properly determined the assessed value of the

Strands property for only the 2013 assessment year." CP at 647, 649. The BTA's initial

decision, which became final when not appealed, established the "valuation for the 2013

---

the taxes under written protest. We will not entertain the Strands' characterization of
their petition as a refund action for the first time in a reply brief. *See, e.g.*, *Cowiche
Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to
address an argument raised for the first time in a reply brief).

assessment year" as $150,000 for land and $175,000 for improvements, for a total value

of $325,000. AR at 1 (capitalization omitted).

The Strands' petition for judicial review under the APA could not address a claim

for money damages that the BTA did not have the authority to determine. *See* RCW

34.05.510(1). The trial court correctly concluded that the relief requested by the Strands

was outside the scope of BTA docket no. 13-179 and outside the scope of its review.

III.     THE TRIAL COURT CORRECTLY FOUND THAT RES JUDICATA BARS ANY CURRENT
         CHALLENGE TO THE 2008, 2009 AND 2010 VALUATIONS

The trial court dismissed the Strands' challenges to the county's 2008, 2009 and

2010 assessed values on the additional ground of res judicata. Res judicata, or claim

preclusion, is an affirmative defense that bars relitigation of claims and issues that were

litigated, or could have been litigated, in a prior action. *Loveridge v. Fred Meyer, Inc.*,

125 Wn.2d 759, 763, 887 P.2d 898 (1995). The purpose of the doctrine is "to prevent

piecemeal litigation and ensure the finality of judgments." *Spokane Research & Def.*

*Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005).

For res judicata to apply, there must have been a final judgment on the merits in a

prior action. *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). The

subsequent action must also be identical with the first action with respect to "(1) persons

and parties, (2) cause of action, (3) subject matter, and (4) the quality of the persons for

or against whom the claim is made." *Spokane Research & Def. Fund*, 155 Wn.2d at 99.

11

No. 35597-7-III
*Strand v. Bd. of Tax Appeals*, *et al.*


Whether res judicata bars a claim for relief is an issue of law that we review de novo.

*Berschauer Phillips Const. Co. v. Mut. of Enumclaw Ins. Co*., 175 Wn. App. 222, 227,

308 P.3d 681 (2013).

All of the required elements of res judicata are present, and bar any current

challenge by the Strands to the 2008, 2009, and 2010 assessed values of their property.

Final orders exist in all of the valuation appeals. Any current challenge to the correctness

or lawfulness of those assessed values sets the Strands in conflict with Spokane County

and its assessor, as did their prior appeals. Any challenge to those assessed values

implicates the same subject matters at issue in the prior appeals, as Ms. Strand freely

admitted in the June 2017 hearing. At that time, she told the court,

> We've appealed continuously since assessment year 2008. We've appealed
> consistently since 2008 under the exact same issues.

RP at 7, and

> [A]ll of the evidence cited in the initial decision [in Docket 13-179] is from
> appeals from prior years, an amazing thing.

RP at 8, and

> I appealed this all the way back in 2008. You can't, in 2013, use facts that
> you had in 2008 and say that I'm not going to be really angry for not
> getting the decision in my favor in 2008 and 2009 and 2010, yes, because
> the facts haven't changed.

RP at 14.

Any current challenge to the 2008, 2009 and 2010 assessed values sets the Strands in conflict with the county and its assessor in the same capacities: the Strands, as taxpayers affected by an assessed valuation, complaining to the agent and agency that arrived at the valuation.

In determining whether there is identity of causes of action, res judicata applies to what might or should have been litigated as well as what was litigated. *Hadley v. Cowan*, 60 Wn. App. 433, 440-41, 804 P.2d 1271 (1991). In order to determine that several causes of action are the same, the court considers

> "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983) (alteration in original) (quoting *Costantini v. Trans World Airlines, Inc.*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).

All of the factors indicating identical causes of action are present. Any current challenge, like the prior appeals, arises out of the same assessments of value, implicates the same evidence, involves alleged infringement of the same right (the right to an accurate assessed value), and would destroy or impair the county's successful defense of its assessed values in the earlier appeals.

Because any current challenge to the 2008, 2009, and 2010 assessed valuations would be identical to the Strands' prior appeals with respect to parties, causes of action,

13

subject matter, and the quality of the persons against whom the claim is made, the trial court correctly ruled that res judicata bars relitigation.

III.  THE TRIAL COURT CORRECTLY FOUND THAT JUDICIAL REVIEW OF THE 2014 AND 2016 VALUATIONS UNDER CHAPTER 34.05 RCW IS BARRED BY THE STRANDS' FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Before petitioning for judicial review under the APA, a person must first "exhaust[ ] all administrative remedies available within the agency whose action is being challenged, or available within any other agency authorized to exercise administrative review."  RCW 34.05.534.  While the statute provides for some exceptions, none of the exceptions applies to the Strands' petition for judicial review.

The exhaustion requirement gives proper deference to an agency that possesses special expertise in an area.  *Smith v. Bates Tech. Coll.*, 139 Wn.2d 793, 808, 991 P.2d 1135 (2000).  The exhaustion requirement also

> (1) prevents premature interruption of the administrative process; (2) allows the agency to develop the factual background on which to base a decision; (3) allows the exercise of agency expertise; (4) provides a more efficient process and allows the agency to correct its own mistake; and (5) insures that individuals are not encouraged to ignore administrative procedures by resort to the courts.

*Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 30, 785 P.2d 447 (1990).  This court reviews de novo a trial court's dismissal for failure to exhaust administrative remedies.  *Cost Mgmt. Servs., Inc. v. City of Lakewood*, 178 Wn.2d 635, 641, 310 P.3d 804 (2013).

14

The Strands did not appeal the 2014 assessed value of their property to the county board. While they did appeal the 2016 assessed value to the county board, they did not appeal the county board's decision to the BTA.

The Strands respond to the defense that they have failed to exhaust their administrative remedies by contending that "new evidence" reveals that the BTA was "hibernat[ing]" and misapplying the law during earlier reviews. Appellant Reply Br. at 18. But possessing new evidence is not a basis for avoiding the exhaustion requirement. The Strands also cite *City of Arlington v. Central Puget Sound Growth Management Hearings Board*, 164 Wn.2d 768, 779, 193 P.3d 1077 (2008), which they misconstrue as holding that the exhaustion requirement does not apply if an agency is alleged to have engaged in unlawful procedure or misapplied the law. The language from *City of Arlington* on which the Strands rely provides only that unlawful procedure and misapplication of the law are errors that can be raised in a timely and otherwise compliant petition for judicial review of *the specific agency action* being appealed. It does not hold that a party who timely appeals one agency action can use the appeal as a forum for complaining about other agency actions it failed to appeal.

The trial court correctly dismissed the Strands' current challenge to the 2014 and 2016 assessed values for failure to exhaust administrative remedies.

IV.  THE STRANDS' CONTINUING OBJECTION TO THE BTA'S DELAY IN DOCKET NO. 13-179 PRESENTS A MOOT ISSUE

15

No. 35597-7-III
*Strand v. Bd. of Tax Appeals, et al.*

Insofar as the Strands continue to complain about the untimeliness of the BTA's decision in docket no. 13-179, the superior court acknowledged their complaint as legitimate, concluding in its order that "the hearing and the decision in BTA Docket No. 13-179 were not undertaken in a timely fashion." CP at 649. It also concluded, however, that "[t]he BTA has substantially fulfilled its duty to render a decision in Docket No. 13-179 through the issuance of its Initial Decision in Docket No. 13-179." *Id.*

A case is moot if a court can no longer provide effective relief. *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). The untimeliness of the BTA's decision presents an issue that is moot.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____          _____
Korsmo, J.                                Fearing, J.

16